United States District Court
Southern District of Texas
**ENTERED**
October 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAVIER REYNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:21-CV-067 |
| | § | |
| ERIC GARZA, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Captain Javier Reyna has served with the Cameron County Sheriff's Office for almost three decades. In 2020, he publicly supported Sheriff Omar Lucio's re-election campaign. Defendant Eric Garza won that election and became sheriff on January 1, 2021. Over the following weeks, Reyna was removed from all supervisory responsibilities and lost the privileges of his senior status. He now brings suit against Sheriff Garza, both in his individual and official capacities, alleging that in violation of Reyna's First Amendment rights, Sheriff Garza retaliated against him for supporting his opponent.

Sheriff Garza, both in his individual and official capacities, moves for dismissal of Reyna's claims. (Off. Cap. Motion, Doc. 6; Ind. Cap. Motion, Doc. 7) For the following reasons, the Court concludes that Reyna's causes of action are not subject to dismissal.

I.      **Allegations and Procedural History[1]**

Reyna has served twenty-eight years with the Cameron County Sheriff's Office (CCSO). (Compl., Doc. 1, ¶ 6) Since about 1994 and through 2020, he served as the Captain of Operations and Critical Incident Commander under the leadership of former-Sheriff Lucio. (*Id.*) In this position, he supervised various CCSO divisions, and also received many privileges, including having his own assigned office, driving a late-model, unmarked, take-home fleet unit, enjoying

---

[1] To consider Sheriff Garza's Motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts Reyna's allegations as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

the preferred work schedule of 8:00 a.m. to 5:00 p.m. with weekends off, and not being required to wear a uniform every day.  (*Id.*)

In the 2020 election for Cameron County Sheriff, Reyna was a "public and vocal supporter" of former-Sheriff Lucio in his re-election campaign.  (*Id.* at ¶ 7)  Reyna expressed his support by "block walking, assisting at political events, and posting supportive messages on social media." (*Id.*)

Sheriff Garza ran against Lucio and ultimately won the election in November.  (*Id.* at ¶ 8)  On January 1, 2021, Sheriff Garza assumed his office.  (*Id.* at ¶ 10)  That same day, Sheriff Garza directed his Chief Deputy, Robert Gracia, to summon Reyna to his office and inform him that he was no longer assigned an unmarked, take-home fleet unit.  (*Id.*)  Several days later, Sheriff Garza ordered Reyna to vacate his office, assigning him a significantly smaller office in another division.  (*Id.* at ¶ 11)  And by the tenth day of entering the position, Sheriff Garza stripped Reyna of all supervisory duties over the Civil Process Division, leaving Reyna with no supervisory duties or subordinates.  (*Id.* at ¶ 13)

On January 21, Reyna told Sheriff Garza that he was ready, willing, and able to perform any supervisory role.  (*Id.* at ¶ 16)  Despite this expressed commitment, Sheriff Garza did not give any assignments to Reyna for weeks.   During that period, Sheriff Garza told another CCSO employee that Reyna was a "*veneno*" (a poison) and that he would "[have] no authority, he will be doing shitty jobs, driving shitty cars from now on." (*Id.* at ¶ 14)  In addition, Reyna was excluded from all supervisor meetings and trainings and had his access to the Law Enforcement Reporting System revoked.  (*Id.* at ¶ 23)

In March 2021, Reyna began receiving orders to conduct long-distance prisoner transports in uniform.  (*Id.* at ¶¶ 18–20)  According to Reyna, "[i]t is unheard of to have a captain of the CCSO personally conducting prisoner transports." (*Id.* at ¶ 20)  And likewise, CCSO had never sent deputies across state lines to pick up a prisoner.  (*Id.* at ¶ 22)  Nevertheless, in early May, Reyna was ordered to pick up a prisoner in Alabama on May 5, and to drive him to Cameron

2

County by May 7.  (*Id.*)  Reyna completed the 2,000-mile round-trip within the allotted two days. (*Id.*)

Based on these allegations, Reyna brings causes of action under 42 U.S.C. § 1983 against Sheriff Garza in his individual and official capacities, alleging that Sheriff Garza violated his right to free speech under the First Amendment of the United States Constitution.  Specifically, Reyna alleges that Sheriff Garza "completely stripped [Reyna] of his supervisory duties and all employment benefits of the rank of captain" in retaliation for Reyna's political speech in support of re-election candidate Lucio.  (*Id.* at ¶ 26)  Sheriff Garza took these steps, alleges Reyna, not to serve CSSO's needs, but "to professionally humiliate [Reyna] to the point he would resign."  (*Id.* at ¶ 24)  He requests a declaratory judgment stating that Sheriff Garza violated his First Amendment right to freedom of expression, a permanent injunction against Sheriff Garza requiring him to assign Reyna to a position with supervisory authority and withhold from any future retaliatory action, compensatory damages, punitive damages, and attorney's fees.  (*Id.* at ¶¶ 32–36)

## II.    Analysis

Sheriff Garza moves for dismissal in both his official and individual capacities.  (Off. Cap. Motion, Doc. 6; Ind. Cap. Motion, Doc. 7)  In both capacities, he argues that Reyna's allegations do not present a prima facie claim of a First Amendment violation.  (Off. Cap. Motion, Doc. 6, ¶ 6.11; Ind. Cap. Motion, Doc. 7, 3)  In addition, in his official capacity, Sheriff Garza argues that Reyna's allegations fail to support a viable claim against a county officer in his official capacity, and that in any event, he was authorized to transfer Reyna from a policymaking position that required loyalty.  (Off. Cap. Motion, Doc. 6, ¶ 6.17)  Additionally, he challenges as impermissible Reyna's request for declaratory and injunctive relief, and for the recovery of punitive damages. (*Id.* at ¶¶ 6.22–6.25)  As an individual, Sheriff Garza contends that the doctrine of qualified immunity precludes Reyna's causes of action.  (Ind. Cap. Motion, Doc. 7, 5)  In addition, he argues that the Court lacks subject matter jurisdiction on the grounds that Texas state law grants the

Cameron County Civil Service Commission exclusive jurisdiction over Reyna's claims.  (*Id.* at 7–9)

### A.  Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  A plaintiff satisfies the facial plausibility standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations in the complaint are not required to be thoroughly detailed, but must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The Court considers only the allegations in the complaint and must accept them as true, viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  If the allegations are sufficient "to raise a right to relief above the speculative level," the Court will not dismiss the cause of action.  *Twombly*, 550 U.S. at 555.

Sheriff Garza in his individual capacity also seeks dismissal on the grounds that the Court lacks subject matter jurisdiction over this claim.  Dismissal pursuant to Rule 12(b)(1) is proper where "the court lacks the statutory or constitutional power to adjudicate the case".  *Home Builder's Ass'n of Miss., Inc. v. City of Madison*, 143 F. 3d 1006, 1010 (5th Cir. 2014).  The plaintiff bears the burden of proving that a district court has jurisdiction by a preponderance of the evidence.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true."  *Paterson v. Weinberger*, 644 F.2d 21, 523 (5th Cir. 1981).

### B.  First Amendment Claim

Reyna alleges that Sheriff Garza violated his First Amendment right to free speech by retaliating against him for supporting former-Sheriff Lucio in his re-election campaign.  Reyna

brings his causes of action under 42 U.S.C. § 1983, a violation of which can be alleged against an official in both his individual and official capacities. In either case, the plaintiff must show that (1) a constitutional or federal statutory right was violated and that (2) the alleged violation was committed by a person acting under color of state law. *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008). With respect to the first element, Reyna must show, whether proceeding against Sheriff Garza in his individual or official capacity, that Sheriff Garza's actions violated Reyna's free speech rights under the First Amendment. As all of Reyna's claims fail if his allegations do not present a viable cause of action under the First Amendment, the Court considers this issue first.

### 1. Sufficiency of the Allegations to Establish a Prima Facia Case

A cause of action for political retaliation in violation of an individual's First Amendment rights requires the plaintiff to demonstrate that he (1) suffered an adverse employment action; (2) engaged in speech on a matter of public concern; (3) had an interest in commenting on matters of public concern that outweighed the defendant's interest in promoting workplace efficiency; and (4) the speech substantially motivated the defendant's action. *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). In the present case, Sheriff Garza argues that Reyna's allegations fail to "identify any particular speech he made [ ] or any basis to establish any action was taken because of that alleged speech." (Off. Cap. Motion, Doc. 6, ¶ 6.11; Ind. Cap. Motion, Doc. 7, 4–5)

The First Amendment protects the right of public employees to speak as citizens on matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "[T]here can be no question that . . . campaigning for a political candidate [is] related to a matter of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 886 (5th Cir. 1995). Sheriff Garza does not dispute this point, but he contends that the Complaint does not "specifically describe the speech which forms the basis for the [retaliation] claim". (Off. Cap. Motion, Doc. 6, ¶ 6.13 (quoting *Bailey v. Dep't of Elem. & Secondary Educ.*, 451 F.3d 514, 519 (8th Cir. 2006)))

The Court agrees that the Complaint does not detail the precise conduct or words that Reyna engaged in during former-Sheriff Lucio's re-election campaign. But Reyna does allege that he participated in the re-election campaign by "block walking, assisting at political events, and posting messages on social media." (Compl., Doc. 1, ¶ 7) These activities and messages constitute protected First Amendment speech. *See, e.g., Maldonado v. Rodriguez*, 932 F.3d 388, 390 (5th Cir. 2019) (concerning protected political speech that included "posting yard signs, wearing campaign T-shirts publicly, block-walking, attending [a] campaign kick-off party, volunteering at polling stations, and posting pictures of themselves wearing [the candidate's] T-shirts on social media"). Reyna does not have to allege the exact blocks that he walked or quote the messages he posted on social media. The allegations suffice to provide fair notice to Sheriff Garza of the speech on which Reyna basis his First Amendment claim. *See Twombly*, 550 U.S. at 555 (explaining that the complaint "does not need detailed factual allegations" as long as it provides the defendant with fair notice of the claim and the grounds supporting the requested relief).

Sheriff Garza in his official capacity urges that courts require plaintiffs to allege the "specific reference to the time, place and substance of the speech". (Off. Cap. Motion, Doc. 6, ¶ 6.13 (quoting *Bailey*, 451 F.3d at 519)) But *Bailey* concerned the sufficiency of the language in a jury charge, not the sufficiency of the plaintiff's allegations to present a prima facia claim of a First Amendment violation. *See id.* at 519. In addition, the precise nature of the speech in *Bailey* proved significant because the plaintiff made the alleged statements within a workplace environment, and the court had to determine whether the statements involved matters of public concern. *Id.* at 516, 519. In contrast, in the present case, no question exists that Reyna's campaign support of former-Sheriff Lucio through block walking and other activities concerned matters of public concern.

Sheriff Garza also argues that specificity is required to avoid "unintended protections to an employee's speech or association that are part of the employee's duties." (Off. Cap. Motion, Doc. 6, ¶ 6.13 (citing *Garcetti*, 547 U.S. at 410 and *Rosenberger v. Rector and Visitors of Univ. of*

*Va.*, 515 U.S. 819 (1995)))  Of course, in the present case, no allegation in the Complaint even suggests that Reyna engaged in his political speech while on duty.  The current lawsuit does not concern workplace speech, and the principles in those decisions do not bear on this case.

Ultimately, the sufficiency of the allegations turns on whether they provide fair notice to Sheriff Garza of the causes of action and the grounds on which they rest.  Reyna's allegations satisfy this standard.  *See, e.g., Cox v. Kaelin*, 577 F. App'x 306, 311 (5th Cir. 2014) (rejecting defendant's argument that "[plaintiff] has not specifically pleaded any facts that suggest he actually engaged in verbal speech" because "political associations qualify as speech under the First Amendment").

Sheriff Garza also contends that Reyna's allegations fail to "identify any facts that would establish any action was taken *because of* any unidentified speech."  (Off. Cap. Motion, Doc. 6, ¶ 6.16 (emphasis in original); *see also* Ind. Cap. Motion, Doc. 7, 5 ("There is nothing alleging Sheriff Garza knew Reyna had walked blocks, knew he had assisted at political events or that Sheriff Garza ever saw or even heard about Reyna's social media messages."))  As a general matter, for purposes of a retaliation claim under the First Amendment, a defendant's knowledge of the alleged speech is a prerequisite to finding a causal connection between the speech and the defendant's conduct.  *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which that party is unaware.").  But as the Court has already concluded, the Complaint contains sufficient information to provide Sheriff Garza with reasonable notice of the nature of Reyna's speech that forms the basis of his claims.  And importantly, Sheriff Garza acknowledges that according to the Complaint, he "transferred [Reyna] because of his support for former Sheriff Lucio."  (Off. Cap. Motion, Doc. 6, ¶ 6.17)  He repeats as much in his Reply, quoting Reyna's statement that Sheriff Garza "reassigned Cpt. Reyna solely because of his political speech", and conceding that this statement "referenc[es] the allegations made in Reyna's Complaint".  (Reply to Off. Cap. Motion,

Doc. 12, ¶ 3.06 (quoting Response to Off. Cap. Motion, Doc. 8, 2)[2]  As a result, the Court concludes that the Complaint appropriately describes the speech on which Reyna bases his claims, and likewise alleges that Sheriff Garza knew of the speech and retaliated against Reyna because of that speech.

In addition, the temporal proximity between Reyna's alleged speech and Sheriff Garza's alleged retaliatory actions supports the sufficiency of the Complaint to present a prima facia case of retaliation under the First Amendment.  Sheriff Garza cites to various decisions and suggests that temporal proximity in itself cannot establish causation.  (Reply to Off. Cap. Motion, Doc. 12, ¶ 3.04 (citing cases))  Those decisions, however, concerned whether sufficient evidence supported the plaintiff's claims so as to survive a motion for summary judgment or support a judgment following a bench trial.  *See Porter v. Houma Terrebonne Hous. Auth. Bd. Of Com'rs*, 810 F.3d 940, 951 (5th Cir. 2015) (reversing summary judgment based, in part, on the existence of a fact issue as to causation); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995) (affirming summary judgment for the defendant); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir. 1992) (reviewing a judgment after a bench trial); *Underwood v. E. Tex. State Univ.*, No. CIV.A.3:96-CV-2739-G, 1998 WL 223695, at *1 (N.D. Tex. Apr. 28, 1998) (granting summary judgment for the defendant).  In contrast, Sheriff Garza currently seeks dismissal under Rule 12(b)(6).  As a result, the Court accepts as true Reyna's allegations that Sheriff Garza took adverse actions against Reyna within one month of taking office and based on Reyna's political speech.

At the motion to dismiss stage, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a

---

[2] Reyna claims that Sheriff Garza's statements amount to a judicial admission.  (Response to Off. Cap. Motion, Doc. 8, 2)  A party is bound by a judicial admission when he makes a voluntary and unequivocal statement of fact.  *See Martinez v. Bally's LA, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  In the present matter, Sheriff Garza has not made such a statement.  Rather, he has characterized his understanding of Reyna's allegations.  As a result, the Court concludes that Sheriff Garza's arguments do not represent a judicial admission.  *See Boyte v. Lionhead Holdings*, No. 10-CV-1467-D, 2012 WL 2680022, at *5 (N.D. Tex July 6, 2012) (declining to find that defendants made a judicial admission in their motion to dismiss because the statement that they were in privity with the plaintiffs was a legal conclusion based on the plaintiffs' version of the facts).  At the same time, Sheriff Garza's statements reveal his interpretation of Reyna's allegations, demonstrating his understanding that the Complaint alleges that Sheriff Garza took adverse actions against Reyna because of Reyna's political speech.

prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also Porter*, 810 F.3d at 948. The temporal proximity "must be very close in time to establish causation by timing alone". *Porter*, 810 F.3d at 948 (cleaned up). In *Porter v. Houma*, the Fifth Circuit recognized that time spans of two months have been found sufficient. *Id.* Likewise, in *Porter v. Valdez*, the court affirmed the denial of a motion for judgment on the pleadings based on allegations that a re-elected sheriff transferred deputies in his office one month after the election in which they had supported the sheriff's political opponent. 424 F. App'x 382, 387 (5th Cir. 2011).[3] Similarly, in *Vojvodich*, the Fifth Circuit concluded that a reasonable factfinder could infer that a deputy's political activities substantially motivated the sheriff to transfer him when a deputy who had actively campaigned for the former sheriff was transferred within three and a half months of the new sheriff assuming office. 48 F.3d at 886.

In the current case, Reyna alleges that he engaged in protected speech during the fall 2020 election cycle. (Compl., Doc. 1, ¶ 7) Sheriff Garza took office on January 1, 2021. (*Id.* at ¶¶ 8–10) That same day, he began taking adverse actions against Reyna. (*Id.* at ¶¶ 10–13) And within one month, despite Reyna expressing his commitment to work under Sheriff Garza, he (Reyna) had lost his privileges as a captain and had been stripped of all supervisory authority. These allegations present closer temporal proximity than existed in *Vojvodich* or in either of the *Porter* decisions. While the temporal proximity "must be very close in time" to support causation by timing alone, Reyna's allegations reflect immediate adverse conduct, satisfying the standard at this stage of the proceedings.

### 2. *Branti/Pickering/Connick* Balancing Test

Sheriff Garza contends that because Reyna held a confidential and policymaking role in the Sheriff's Department, he "may not now complain about his transfer from that position." (Off. Cap. Motion, Doc. 6, ¶ 6.21)   In essence, Sheriff Garza argues that based on the

---

[3] When considering a motion for judgment on the pleadings, courts apply the same standard applicable to Rule 12(b)(6) motions. *See, e.g., Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

*Branti/Pickering/Connick* balancing test, he had the authority to re-assign Reyna because of Reyna's support of a political opponent.  In response, Reyna argues that Sheriff Garza "has not demonstrated how party affiliation is an appropriate requirement for the effective performance of a deputy sheriff's duties."  (Response to Off. Cap. Motion, Doc. 8, 5)  In addition, Reyna contends that Sheriff Garza has failed to allege that Reyna's support of former-Sheriff Lucio "has actually caused a disruption within the department".  (*Id.*)

Once a plaintiff presents a viable claim that his alleged speech related to a matter of public concern–and Reyna has done so in the present case–"the employer then must establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity." *Vojvodich*, 48 F.3d at 885; *see also Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020).  The court "seeks a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  The analysis "is a sliding scale or spectrum upon which 'public concern' is weighed against disruption." *Vojvodich*, 48 F.3d at 885. As part of that balancing test, "[a] stronger disruption may be necessary if the employee's speech more substantially involves matters of public concern." *Id.*  On the other hand, "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Id.*

If the public employee functions as a policymaker or confidential employee, "the government's interests more easily outweigh the employee's (as a private citizen)." *Id.*; *see also Garza*, 972 F.3d at 729.  "Employees may be policymakers if they 'control[] or exercise[] a role in a decision making process as to the goals and general operating procedures of (an) office.'" *Garza*, 972 F.3d at 729 (quoting *Aucoin v. Haney*, 306 F.3d 268, 273 (5th Cir. 2002)).  Policymakers are also those "whose responsibilities require more than simple ministerial competence, whose

decisions create or implement policy," and who have broad discretion in performing their job duties. *Maldonado*, 932 F.3d at 392. An employee may also be a "confidential employee" if he or she has access to confidential materials or advises a policymaker, such that "a close working relationship is essential." *Kinsey v. Salado Ind. Sch. Dist.*, 950 F.2d 988, 996 (5th Cir. 1992).

"The conclusion that [an employee] served a confidential and policymaking role helps, but does not end, [the] analysis." *Garza*, 972 F.3d at 732. "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Maldonado*, 932 F.3d at 392 (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)(cleaned up)). To answer this question, courts "ask whether 'the employee's activities in some way adversely affect[ed] the government's ability to provide services." *Garza,* 972 F.3d at 732 (quoting *Vojvodich*, 48 F.3d at 887). Still, courts "do not require employers to wait until their office is disrupted before taking action." *Garza*, 972 F.3d at 732. "[W]here close working relationships are involved, courts accord 'a wide degree of deference to the employer's judgment.'" *Id.* (quoting *Connick*, 461 U.S. at 152).

Applying these governing principles, the Court concludes that based on the allegations within the Complaint, Reyna functioned as a policymaker and a confidential employee in his role as Captain of Operations and Critical Incident Commander. He served as one of only three captains within the CCSO, and as Captain of Operations, he "was responsible for the supervision of almost the entire Sheriff's Office", including the Patrol Division, Criminal Investigations Division, Narcotics Investigations, Civil Process Division, Communications Division, Support Staff, and Jail Operations. (Complaint, Doc. 1, ¶ 6) He enjoyed access to the Law Enforcement Reporting Management System, a restricted electronic database. (*Id.* at ¶ 23) Such overarching responsibilities would have required Reyna to utilize discretion in managing the operations of the CCSO and supervising his subordinates. Given his position, Reyna necessarily exercised significantly more than "simple ministerial competence." As a result, based on his own

allegations, and accepting them as true, Reyna functioned as a policymaker and a confidential employee.

In the next step of the analysis, however, the Court concludes that Sheriff Garza fails to show that Reyna's political speech in some way adversely affected or potentially affected the Cameron County Sheriff Department's ability to provide services. This failure leads the Court to find that, based on the allegations before it, Sheriff Garza has not demonstrated that party affiliation is an appropriate requirement for effective performance of the office of Captain within the Sheriff's Department.

When determining whether party affiliation is an appropriate requirement, courts consider whether an employee's activities in some way adversely affected the government's ability to provide services. As part of this analysis, it is true that employers enjoy broad discretion and need not "wait until their office is disrupted before taking action." *Garza*, 972 F.3d at 732. But this principle does not give newly-elected officeholders such as Sheriff Garza blanket authority to take adverse action against all subordinates who hold policymaker positions and who opposed him in an election. Sheriff Garza's contention essentially proposes that once a court concludes that a subordinate functions as a policymaker or confidential employee, the supervisor can automatically assume the employee will disrupt the office's functions, authorizing the supervisor to immediately take adverse action against the subordinate for his political speech. The law does not support such a position. In fact, the Fifth Circuit in *Garza* expressly clarifies that concluding that an employee is a policymaker or confidential employee "helps, but does not end" the analysis. 972 F.3d at 732. Sheriff Garza's argument runs afoul of this guidance by asking the Court to effectively presume that all policymakers and confidential employees will necessarily disrupt a state office's provision of services. The *Branti/Pickering/Connick* analysis does not permit such an assumption. Indeed, courts have denied the defense that Sheriff Garza advances even when the subordinate held a position of confidence or was a policymaker. *See, e.g.*, *Vojvodich*, 48 F.3d at 887.

12

In the present case, Sheriff Garza solely posits, in conclusory fashion, that he "could not be assured that Reyna would not undermine the Department". (Off. Cap. Motion, Doc. 6, ¶ 6.21) He bases this statement, however, not on any alleged statement or action on the part of Reyna suggesting that he (Reyna) would be disloyal to his new supervisor. Rather, Sheriff Garza takes the position that solely because Reyna supported former-Sheriff Lucio in the election, Reyna would necessarily be disloyal. Again, while courts "accord 'a wide degree of deference'" to supervisors such as Sheriff Garza, the deference is not absolute. *Garza*, 972 F.3d at 732 (quoting *Connick*, 461 U.S. at 152). Sheriff Garza must rely on some factual allegations supporting his conclusion that Reyna would be disloyal. For example, in *Garza*, the plaintiff in her allegations "detail[ed] how her activities 'adversely affect[ed] the government's ability to provide services.'" 972 F.3d at 733 (quoting *Vojvodich*, 48 F.3d at 887). Reyna's Complaint contains no allegations casting doubt on his willingness and ability to continue to meet his employment duties under Sheriff Garza's auspices. On the contrary, even after Sheriff Garza relieved Reyna from his supervisory duties and placed him in a smaller office, Reyna notified him that "he was ready, willing, and able to perform any supervisory role available." (Compl., Doc. 1, ¶ 16) And he complied with all orders that Sheriff Garza and his Chief Deputy assigned him. (*Id.* at ¶ 22) In light of Reyna's Complaint and Sheriff Garza's failure to provide any factual allegations regarding how Reyna's political speech demonstrated that he would potentially be disloyal, the Court reaches the same conclusion as in *Vojvodich*: "[T]here simply is no countervailing state interest to weigh against the employee's First Amendment rights." 48 F.3d at 886.[4]

Having concluded that Reyna presents a viable First Amendment retaliation claim that is not subject to dismissal based on the *Branti/Pickering/Connick* balancing test, the Court now considers the other defenses that Sheriff Garza advances in his official and individual capacities.

---

[4] Sheriff Garza downplays *Vojvodich* as having been modified by *Garza* and the Supreme Court's decision in *Garcetti*, 547 U.S. at 410. (Reply to Off. Cap. Motion, Doc. 12, ¶ 3.10 n.2) But no language in either of those cases suggests that *Vojvodich* does not remain good law. In fact, the Fifth Circuit in *Garza* and *Maldonado* rely significantly on *Vojvodich*. *See, e.g.*, *Garza*, 972 F.3d at 729 (citing *Vojvodich* favorably); *Maldonado*, 932 F.3d at 394 (same).

### C.  Claims against Sheriff Garza in His Official Capacity

#### 1.  Municipal Liability

In the present case, Reyna alleges his Section 1983 action against Sheriff Garza in his official capacity, relying on the "single decision by a final policymaker" theory of liability.  Reyna alleges that Sheriff Garza is a final policymaker such that his decisions as Sheriff constitute an official government policy.  (Compl., Doc. 1, ¶ 29)

A suit against a defendant in his official capacity is equivalent to a suit against the government entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (applying the principle to a county sheriff sued in his official capacity).  Municipalities are "persons" for purposes of Section 1983 and may be held directly liable under the statute.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–694 (1978).  But under Section 1983, a municipality does not bear liability on the theory of *respondeat superior*, but only for acts directly attributable to it "through some official action or imprimatur."  *Id.* at 694*; see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001).  To establish municipal liability under Section 1983, a plaintiff "must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'"  *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002) (citing *Piotrowski*, 237 F.3d at 578)).[5]

"[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable."  *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000). But the single-incident exception "is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker."  *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th

---

[5] Garza argues that a defendant in an official-capacity action may assert sovereign immunity (Off. Cap. Motion, Doc. 6, ¶ 6.03), but this principle holds true only where the official is a representative of the state.  Sovereign immunity granted to states under the Eleventh Amendment does not apply to municipalities or their officials.  *Monell,* 436 U.S. 658.  As Sheriff Garza is a county official, sovereign immunity is inapplicable in this lawsuit.

Cir. 2008). For the single-incident exception to apply, a final policymaking official must have made "a deliberate choice . . . from among various alternatives . . . with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–82 (1986).

State law controls whether a county official has final policymaking authority. *Id.* at 483. An official's title is not dispositive; the analysis must be tailored to whether the official is a final policymaker for the municipality "in a particular area, or on a particular issue". *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). The Fifth Circuit has determined that for most purposes, county sheriffs are final policymakers in Texas because the unique structure of local government provides elected county officials "virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute." *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980); *see also Brady v. Fort Bend Cty.*, 145 F.3d 691, 700 (5th Cir. 1998). In particular, "Texas sheriffs [ ] exercise final policymaking authority with respect to the determination of how to fill employment positions in the county sheriff's department." *Brady*, 145 F.3d at 700.

To succeed on a Section 1983 claim, a plaintiff cannot "merely [ ] identify conduct properly attributable to the municipality", but "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. Of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). In other words, the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. When the plaintiff alleges that the "municipal action *itself* violates federal law, . . . resolving these issues of fault and causation is straightforward." *Id.* at 404–405 (emphasis in original). "Proof that a municipality's [ ] authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 405. "Similarly, the conclusion that the action taken or directed by the municipality or its

authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.*

In the present matter, Sheriff Garza argues that Reyna's allegations do not identify the required official policy, and that he has not sufficiently alleged that Cameron County or Sheriff Garza had actual or constructive knowledge of a custom or policy that was deliberately indifferent to his constitutional rights.  (Off. Cap. Motion, Doc. 6, ¶¶ 6.04–6.05)  Based on governing law, however, the Court concludes that Reyna's allegations satisfy the *Monell* elements.

First, the Court concludes that Reyna's allegations, accepting them as true, demonstrate that Sheriff Garza was a final policymaker with respect to the alleged actions against Reyna, and that his decisions constitute the county's policies for purposes of Section 1983.  Reyna alleges that Sheriff Garza transferred him, assigned him menial tasks, and removed his supervisory duties. (Compl., Doc. 1, ¶ 26)  Such decisions fall within the employment decisions considered and contemplated in *Brady*, which concluded that as to such decisions, the sheriff exercises final policymaking authority.  As a result, Sheriff Garza is a final policymaker for purposes of Reyna's claims.

In addition, Sheriff Garza's decisions regarding Reyna represent the moving force behind the alleged violation of his federal rights.  This case does not concern allegations that Sheriff Garza rendered a decision that, in turn, created an environment that permitted or animated a violation of Reyna's constitutional rights.  Rather, Reyna alleges that Sheriff Garza's decision *itself* violated his constitutional rights.  Such allegations "necessarily establish[]" that the "municipality acted culpably" through its authorized decisionmaker, and that "the municipal action was the moving force behind the [alleged] injury".  *Brown*, 520 U.S. at 405.  At this stage of the litigation, these allegations present a viable claim against Sheriff Garza in his official capacity.

### 2.  Injunctive and Declaratory Relief

Sheriff Garza in his official capacity also contends that Reyna's requests for a declaratory judgment and injunctive relief should be dismissed because "the only purpose for Reyna's

requested equitable relief is to support his claim for money damages, [so] that relief is not authorized". (Off. Cap. Motion, Doc. 6, ¶ 6.22 (relying on *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000) and *Hendricks v. UBS Financial Services*, 546 F. App'x 514, 520 (5th Cir. 2013))) Those decisions, however, addressed the requirements for class certification and appropriate remedies specific to class action claims for injunctive relief. The legal principles in those cases do not apply to Reyna's lawsuit. On the contrary, a plaintiff who brings a lawsuit under Section 1983 may request "monetary, declaratory, and injunctive relief", so long as the requested relief is not barred by the Eleventh Amendment. *See Los Angeles County. v. Humphries*, 562 U.S. 29, 39 (2010) (stating that the *Monell* analysis is the same "irrespective of whether the relief sought is monetary or prospective"); *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020) (permitting state employees who brought a Section 1983 action for the violation of their First Amendment rights to seek injunctive relief against the state entity to be reinstated to their previous positions and monetary relief against the government official in his individual capacity); *Harrington v. Harris*, 118 F.3d 359, 364 (5th Cir. 1997) (granting plaintiff injunctive relief and compensatory damages in a Section 1983 action). Here, Cameron County is a municipality and is not entitled to sovereign immunity under the Eleventh Amendment. *See Monell*, 436 U.S. at 659. As a result, Reyna's requested equitable relief is not legally impermissible.

In addition, Sheriff Garza argues that Reyna's request for a declaratory judgment is "an impermissible request for an advisory opinion". (Off. Cap. Motion, Doc. 6, ¶ 6.24) The Court disagrees. The Fifth Circuit has adopted a two-step inquiry to determine whether a request for a declaratory judgment is appropriate or "merely [seeking] an advisory opinion". *Meltzer v. Bd. Of Pub. Instruction*, 548 F.2d 559, 569 (5th Cir. 1977). "The first [step] is whether the [claimant's] allegations are 'imaginary or speculative' or whether they are, on the contrary, real and substantial." *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Second, a "living case or controversy" must exist. *Meltzer*, 548 F.2d at 571. In the present case, Reyna's allegations

describe a real and substantial injury—i.e., the loss of his position and privileges as a captain.  In addition, an ongoing controversy remains, as Reyna alleges that he continues to be excluded from supervisor activities and remains unable to access the Law Enforcement Reporting Management System.  (Compl., Doc. 1, ¶ 23)  Accepting Reyna's allegations as true, the challenged retaliatory conduct by Sheriff Garza has not been rectified, and a declaration regarding its constitutionality would not be advisory.  As a result, Sheriff Garza's argument on this issue fails.

### 3.  Punitive Damages

Sheriff Garza in his official capacity also urges dismissal of Reyna's claim for punitive damages on the grounds that a municipality is immune from liability for such damages under Section 1983.  (Off. Cap. Motion, Doc. 6, ¶ 6.25 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)))  He is correct, and Reyna acknowledges as much, clarifying that he "is only seeking punitive damages from [Sheriff] Garza in his individual capacity".  (Response to Off. Cap. Motion, Doc. 8, 17)  Based on Reyna's concession, the Court concludes that Sheriff Garza's Motion as to this issue is moot.

### D.  Claims against Sheriff Garza in His Individual Capacity

Sheriff Garza, in his individual capacity, relies on the doctrine of qualified immunity as a defense to Reyna's allegations.  He also challenges that subject matter jurisdiction exists, on the grounds that the Cameron County Civil Service Commission has exclusive jurisdiction over Reyna's claims.

### 1.  Qualified Immunity

Qualified immunity protects government officials who are sued in their individual capacities based on discretionary actions taken within the course and scope of their official duties. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815–19 (1982).  A government official is entitled to qualified immunity to the extent his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.  To overcome the defense of qualified immunity, a plaintiff must establish (1) a violation of a constitutionally

protected right; and (2) the unlawfulness of the conduct was "clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  The clearly established prong of this analysis is a rigorous standard intended to protect "all [government officials] but the plainly incompetent and those who knowingly violated the law."  *Malley v. Briggs*, 475 U.S. 335, 339 (1986).  The law is clearly established only where there is sufficient factually-similar precedent such that "every reasonable official would understand that [the conduct] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As to the first step in the analysis, the Court already has concluded that Reyna has alleged a prima facie retaliation claim under the First Amendment.  *See supra* Part II.B.1.  As a result, whether Sheriff Garza in his individual capacity enjoys the protections afforded by qualified immunity turns on whether, in January 2021, the unlawfulness of the alleged conduct was clearly established.

Based on substantial precedent in the Fifth Circuit, the Court concludes that at the time of the relevant events, it was clearly established that Sheriff Garza's alleged conduct violated Reyna's constitutional rights as a government employee to engage in political speech without retaliation by his employer.  In fact, no less than three decisions, between 1992 and 1998, demonstrate that a sheriff violates a subordinate's First Amendment free speech rights by demoting, transferring, or otherwise adversely affecting the subordinate's employment status based on the subordinate's support of the sheriff's campaign opponent.  *See Brady*, 145 F.3d at 700; *Vojvodich*, 48 F.3d at 885; *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992).  In *Brady*, the Fifth Circuit concluded that the defendant sheriff was not entitled to qualified immunity when he declined to rehire deputy sheriffs on the basis that they supported his political opponent.  145 F.3d at 700.  In *Vojvodich*, the court confirmed that "the established law in this circuit has been that a public employer cannot retaliate against an employee for expression protected by the First Amendment merely because of that employee's status as a policymaker."  48 F.3d at 887.  In that case, Deputy Vojvodich claimed that Sheriff Lopez transferred him to a different division and

denied him a promotion in retaliation for his political support of the sheriff's opponent in an election. *Id*. at 882–883. Based on these allegations–which mirror Reyna's claims against Sheriff Garza–the Fifth Circuit concluded that Sheriff Lopez did not receive the protections of qualified immunity. *Id*. at 885. And in *Click*, the Fifth Circuit reasoned that a sheriff violated the First Amendment rights of deputies by transferring them to less desirable positions in retaliation for opposing the sheriff's candidacy. 970 F.2d at 109. The court in *Click* explained that "any discipline," including a demotion or removal from a seniority position, in retaliation for an employee's political activity implicates the First Amendment. *Id*. at 111.

Reyna's allegations fall squarely within the parameters of the facts at issue in *Brady*, *Vojvodich*, and *Click*. Reyna alleges that in retaliation for his support of former-Sheriff Lucio, Sheriff Garza transferred Reyna, assigned him to less desirable duties, and stripped away his supervisory responsibilities and privileges as a captain. Although the defense of qualified immunity generally provides broad protection for government officials, based on Reyna's allegations, Sheriff Garza is not shielded from liability here, as decades of Fifth Circuit precedent establish the unlawfulness of his alleged conduct.

### 2. Jurisdictional Arguments

In his individual capacity, Sheriff Garza argues that the case should be dismissed for lack of subject matter jurisdiction because the Texas Legislature vested the Cameron County Civil Service Commission with exclusive jurisdiction to hear and determine appeals and grievances filed by employees. (Ind. Cap. Motion, Doc. 7, 7) He cites to no federal caselaw supporting this position, but rather requests that the Court extend Texas state caselaw to the federal sphere. (*Id*. at 7–8) And at the hearing on the Motion, counsel for Sheriff Garza acknowledged that he was not aware of the Cameron County Civil Service Commission considering claims such as those brought by Reyna under the United States Constitution. The Court concludes that a state administrative agency does not have exclusive jurisdiction to consider a claim under Section 1983 based on a First Amendment retaliation claim. *McNeese v. Bd. Of Ed.*, 373 U.S. 668, 672 (1963)

("The First Congress created federal courts as the chief—though not always the exclusive—tribunals for enforcement of federal rights.").  No legal authority supports Sheriff Garza's position that the Court lacks subject matter jurisdiction over Reyna's causes of action.[6]

Finally, in his individual capacity, Sheriff Garza also contends that "a party is required to exhaust all administrative remedies before seeking judicial review of the decision."  (Ind. Cap. Motion, Doc. 7, 8–9)  The Court disagrees.  The Supreme Court has "on numerous occasions rejected the argument that a [Section] 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."  *Patsy v. Bd. Of Regents*, 457 U.S. 496, 507 (1982); *see also Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.").  As a result, Reyna is not required to pursue state remedies prior to bringing an action under Section 1983.

## III.    CONCLUSION

For these reasons, it is:

**ORDERED** that Defendant's Rule 12 Motion to Dismiss for Failure to State a Claim for Relief in His Official Capacity under Fed. R. Civ. P. 12(b)(6) (Doc. 6) is **DENIED**; and

**ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief and Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction in His Individual Capacity (Doc. 7) is **DENIED**.

Signed on October 29, 2021.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge

---

[6] Based on his argument regarding subject matter jurisdiction, Sheriff Garza also contends in the alternative that the Court should abate the lawsuit based on the Cameron County Civil Service Commission's primary jurisdiction.  (Ind. Cap. Motion, Doc. 7, 9)  In advancing this argument, Sheriff Garza likewise provides no supporting legal authority, and the Court is unaware of any.  The Court concludes that the Commission does not possess primary jurisdiction over Reyna's claims and, as a result, denies the request to abate.