Case 1:21-cv-00067   Document 37   Filed on 07/14/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JAVIER REYNA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 1:21-CV-067 |
| § | |
| ERIC GARZA, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM OPINION**

Captain Javier Reyna served with the Cameron County Sheriff's Office for almost three decades. In 2020, he publicly supported Sheriff Omar Lucio's re-election campaign. Defendant Eric Garza—Lucio's opponent—won that election and became sheriff on January 1, 2021. Over the following weeks, Reyna lost all supervisory responsibilities and the privileges of his senior status. He now brings suit against Garza, alleging that Garza retaliated against him for supporting Garza's opponent in retaliation of his First Amendment rights.

Garza, both in his individual and official capacities, moved for summary judgment. (Motion, Doc. 29) On July 8, 2021, the Court granted the motion. (Doc. 36) In this Memorandum Opinion, the Court explains why Garza is entitled to summary judgment as to all of Reyna's claims.

**I.     Summary Judgment Facts**[1]

Reyna served for twenty-eight years with the Cameron County Sheriff's Office (CCSO). From 2005 to 2021, when he retired, he held the title of Captain. (Reyna Dep., Doc. 24, 28:15–32:8)

In the 2020 primary campaign for the Democratic candidate for Cameron County Sheriff, Reyna demonstrated his support for the incumbent, former-Sheriff Omar Lucio, by block walking, posting messages on social media, and assisting at political events. (*Id.* at 66:5–22) One such

---

[1] The Court construes the facts and inferences drawn from the competent summary judgment evidence in the light most favorable to Reyna. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

event occurred at Burns Elementary School, at which Reyna wore a Lucio t-shirt and stood in front of Lucio's trailer. (*Id.* at 67:21–68:6) Eric Garza, Lucio's political opponent, also attended the event. (Garza Dep., Doc. 32-1, 30:1–17) He "greeted everybody in all of Burns that was there . . . which included every single candidate that was there and their supporters." (*Id.* at 11–15) Reyna remembers fist-bumping and greeting Garza at the school, although Garza does not recall the interaction. (Reyna Dep., Doc. 24, 68:3–15; Garza Dep., Doc. 32-1, 31:6–12)

Garza defeated Lucio in the primary election, and then won the general election in November. In anticipation of beginning his administration, he requested that the CCSO officers fill out a packet describing their responsibilities. (Garza Dep., Doc. 32-1, 102:7–103:13) At the time, his understanding of the CCSO's command structure was that Gus Reyna and Javier Reyna were "on the same level but were directly supervised by the sheriff," and everyone else in the department, such as lieutenants and sergeants, was "under Javier Reyna." (*Id.* at 56:10–15)

Before Garza assumed office, Reyna had a preferred work schedule with weekends off, was not required to wear a uniform, had supervisory authority, held the title of Captain of Operations/Critical Incident Commander, and had access to advancement and accolades. (Reyna Dep., Doc. 24, 39:4–10)

Just after midnight on January 1, 2021, Garza took the oath and assumed the position of sheriff. (Garza Dep., Doc. 32-1, 48:15–49:14) Within hours of the swearing-in ceremony, he began making changes to the CCSO. At Garza's instructions, Chief Deputy Robert Gracia ordered Reyna to give him the keys to his take-home fleet vehicle. (*Id.* at 67:2–8) On January 6, Garza ordered Reyna to vacate his office and removed him from his assignment coordinating SpaceX security services. (*Id.* at 68:17 and 82:2–83:25) The next day, Garza reassigned Reyna to the Civil Process Division, and a few days later, reassigned him again, this time to the Jail Transport Division. (Memorandum, Doc. 32-2; Garza Dep., Doc. 32-1, 101:2 and 114:11–25) Garza did not conduct a performance evaluation before transferring Reyna, and testified that he was "losing faith in [Reyna's] ability to continue working in the sheriff's office because all these things started

2

popping up within the first six days" of his administration. (Garza Dep., Doc. 32-1, 101:4–23) By "these things", Garza referred to issues on matters that Reyna oversaw, including laptops that did not work, the failure to report to the National Incident-Based Reporting System, and dispatch problems. (*Id.*)

Reyna saw the transfer to the Jail Transport Division as an adverse employment action. He viewed his assignments within that division as "less prestigious" than his previous supervisory and administrative responsibilities. (Reyna Dep., Doc. 24, 149:15–150:25)

Reyna alleges that Garza ordered the transfer because of Reyna's political support of Lucio, highlighting conduct by Garza that demonstrates his animus toward Reyna. For example, Garza ordered former-Captain Andres Arreola to conduct internal investigations into Reyna's firearms qualifications and attendance at training classes. (*Id.* at 134:8–139:18) Arreola confirmed that Garza repeatedly ordered him to investigate Reyna, and that when he did not uncover any wrongdoing, Garza told him to "keep digging." (Arreola Aff., Doc. 32-4, 1) In addition, in March 2021, Garza told Arreola that "I have Captain Reyna powerless, I have him doing shit assignments and I have him driving shitty vehicles." (*Id.* at 2) Arreola considered this conduct as Garza "targeting" Reyna. (*Id.* at 2)

In response, Garza contends that Reyna's job performance led to the transfer. In particular, Garza testified that Reyna failed to provide requested information on the "Top Ten Most Wanted List" and the billing records for the contract between the County and SpaceX, that Reyna misused Department funds to purchase a number of vehicles and clothing, that Reyna mishandled the Department's overtime budget, and that issues arose with respect to equipment and reporting obligations under Reyna's supervision. (Garza Aff., Doc. 27-1; Garza Dep., Doc. 32-1, 104:1–106:10)

Reyna's own testimony corroborates some of Garza's concerns with his job performance. For example, Reyna admitted that he was the person assigned to assist with Garza's transition to sheriff, but he failed to provide Garza with various documents—such as employee files, case lists,

and office equipment inventory—even after Garza took office. (Reyna Dep., Doc. 24, 95:1–97:12 and 220:18) Regarding his responsibilities over the SpaceX security contracts, Reyna stated that he "wouldn't keep schedules" or save any kind of record as to what, or whose, time the invoices submitted to SpaceX reflected. (*Id.* at 112:21–115:19) And as to various questions related to his other responsibilities, such as reporting requirements, he could not provide clear answers. (*See, e.g., id.* at 185:9–187:16)

## II.   Procedural Background

In May 2021, Reyna filed suit against Garza pursuant to 42 U.S.C. § 1983, alleging that Garza violated his right to free speech under the First Amendment of the United States Constitution. (Compl., Doc. 1) Specifically, Reyna alleges that Garza transferred him to the Jail Transport Division and removed him of all supervisory authority in retaliation for Reyna's political speech in support of incumbent candidate Lucio. (*Id.*)

Reyna requests a declaratory judgment that Garza violated his First Amendment right to freedom of expression, a permanent injunction against Garza requiring him to assign Reyna to a position with supervisory authority and withhold from any future retaliatory action, and the recovery of compensatory and punitive damages, as well as attorney's fees. (Compl., Doc. 1, ¶¶ 32–36)

Initially, Garza, in his individual and official capacities, moved under Federal Rule of Civil Procedure 12 for dismissal of Reyna's claims, on the grounds that Reyna failed to plead sufficient facts to establish a prima facie case of retaliation, that Garza is entitled to qualified immunity in his individual capacity, and that in his official capacity, he was authorized to transfer Reyna from a policymaking position that required loyalty. (Off. Cap. Motion, Doc. 6; Ind. Cap. Motion, Doc. 7) The Court denied the Motions. (Opinion and Order, Doc. 17)

Garza now moves for summary judgment as to all of Reyna's claims on the grounds that: (1) Reyna fails to present sufficient evidence to establish a First Amendment retaliation claim; (2) Reyna fails to identify a deliberately indifferent custom or policy of Cameron County to establish

that Garza is liable in his official capacity; and (3) Reyna's alleged First Amendment violation was not clearly established at the time of the alleged wrongful conduct, and thus, Garza is entitled to qualified immunity in his individual capacity. (Doc. 29)

In his Response, Reyna identifies five areas in which he contends a genuine dispute of material fact exists: (1) whether Garza had knowledge that Reyna campaigned for Lucio; (2) whether Reyna's political speech adversely affected the CCSO's ability to provide services; (3) whether Garza had a retaliatory motive or legitimate basis to reassign Reyna; (4) whether Garza was a final policymaker; and (5) whether Reyna's alleged constitutional violation was clearly established. (Response, Doc. 32, 3)

### III. Analysis

#### A. Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine dispute of material fact exists, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine dispute over material facts exists if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," and the fact at issue might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If this evidence is provided, the burden then shifts to the responding party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. at 257. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

5

sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

Summary judgment is proper where "no disputed facts cloud[] the resolution of the legal issue, and all that remain[s] [i]s to apply well-settled law to the facts." *Loza v. Select Portfolio Servicing, Inc.*, 820 F. App'x 240, 241–42 (5th Cir. 2020).

### B. Standard for First Amendment Retaliation Claim

Garza moves for summary judgment on three grounds, the first of which is that Reyna has failed to establish a First Amendment claim of retaliation. Specifically, Garza argues that Reyna has not demonstrated the requisite causation because several grounds unrelated to Reyna's political speech justified the reassignment. (Motion, Doc. 29) Based on the summary judgment record and the applicable law, the Court agrees. As a result, the Court does not reach Reyna's arguments regarding qualified immunity and municipal liability.

A cause of action for political retaliation in violation of an individual's First Amendment rights requires the plaintiff to demonstrate that he (1) suffered an adverse employment action; (2) engaged in speech on a matter of public concern; (3) had an interest in commenting on matters of public concern that outweighed the defendant's interest in promoting workplace efficiency; and (4) the speech substantially motivated the defendant's action. *Beattie v. Madison City. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

On the issue of causation, a plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision". *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). Rather, the plaintiff must establish only that her protected conduct was "one of the reasons" for the adverse employment action. *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). The employee need not present direct evidence of a retaliatory motive, as a "chronology of events from which retaliation may plausibly be inferred" can create a fact issue requiring a trial. *See Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (internal citations omitted).

In addition, "[c]lose timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation." *Mooney*, 538 F. App'x at 454. The "temporal proximity between protected activity and an adverse employment action should be viewed in the context of other evidence". *Id.* The interval must be "very close" to create a fact issue on causation without other supporting evidence. *See Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 885 (5th Cir. 2020) (concluding that a two and one-half month interval, "standing alone", could not establish causation); *Evans*, 246 F.3d at 354 (finding a lapse of only five days sufficient to provide the "causal link").

Once an employee satisfies this initial burden, the employer can still avoid liability by demonstrating "by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct." *Brady*, 113 F.3d at 1423 (relying on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87 (1977)); *see also Haverda v. Hays Cnty.*, 723 F.3d 586, 591–92 (5th Cir. 2013) (citing *Mt. Healthy* decision). An employer meets this burden by proffering a legitimate, non-retaliatory justification for the adverse employment action. *See Swilley v. City of Houston*, 457 F. App'x 400, 404 (5th Cir. 2012) (finding that the defendant's non-retaliatory explanation for terminating plaintiff's employment as a senior police officer—that she had been untruthful in her statements regarding investigations—met the employer's burden).

If the employer puts forward non-retaliatory reasons for the adverse employment action, the burden "shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (cleaned up). To "demonstrate pretext and avoid summary judgment", the plaintiff must show "a conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (cleaned up). Evidence of a pretext includes actions that directly contradict or undermine the employer's reasons for the

employment action. *See Mooney*, 538 F. App'x at 456 (finding that the plaintiff raised a genuine dispute of material fact of a pretext where she presented evidence that controverted each of the employer's three rationales for not rehiring her); *Jordan v. Ector Cnty*, 516 F.3d 290, 300-01 (5th Cir. 2008) (reasoning that evidence that other employees "engaged in conduct similar to [the plaintiff's] without being disciplined" and that the plaintiff had comparable performance to employees who were not transferred was sufficient to create a fact issue as to pretext); *Click v. Copeland*, 970 F.2d 106, 114 (5th Cir. 1992) (same).

In general, "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate", and "if a plaintiff brings forth evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury." *Haverda*, 723 F.3d at 595–96. "Courts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted." *Id.* at 596; *see also United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328 (5th Cir. 2021) (dismissing the employee's retaliation claim because the evidence did not contradict the reasons the employer offered for the termination); *Moore v. Huse*, 578 F. App'x 334, 341 (5th Cir. 2014) (affirming summary judgment because the plaintiff "failed to demonstrate that th[e] reason [for the suspension] was pretextual"); *Pierce v. Texas Dep't of Crim. Justice*, 37 F.3d 1146, 1151 (5th Cir. 1994) (finding that the employee presented no evidence that the employer acted with retaliatory intent where the disciplinary action was within the department's guidelines). And "simply disputing the underlying facts of an employer's decision is not sufficient to create a fact issue." *Haverda*, 723 F.3d at 596.

8

### C. Application

Garza focuses his argument on the causation element, asserting that his actions were based on the needs of the CCSO and unrelated to Reyna's political speech.[2]

#### 1. Reyna's Evidence of Causation

Reyna has satisfied his initial burden to bring forth evidence that his political speech in favor of Lucio was at least one of the motivating factors for his transfer. Reyna recalls interacting with Garza at a political gathering at Burns Elementary School, while Reyna wore a Lucio t-shirt and stood in front of Lucio's trailer. Garza recalled that event, and acknowledged that he greeted every person there, even if he did not specifically remember Reyna. Drawing all reasonable inferences in favor of Reyna leads to the conclusion that Garza knew that Reyna campaigned on behalf of Lucio.

Given Garza's knowledge, the chronology of events suffices to create a fact issue as to whether Reyna's political speech was at least one of the motivating factors for the transfer. It is true that Reyna's campaign activities ended months before the reassignment occurred. But at the time of the campaign event, Garza had no authority over Reyna. Within a week of taking office, however, Garza began stripping Reyna of his privileges and supervisory authority. Viewed in the context of the election timeline and Garza taking office, the temporal proximity between Reyna's political speech and his reassignment is some evidence of a causal connection between the two. Additionally, Arreola affies that Garza repeatedly ordered him to investigate Reyna for potential wrongdoing and appeared to be targeting Reyna to create a hostile work environment for him. (Arreola Aff., Doc. 32-4, 2) This evidence lends further weight to Reyna's prima facia case of retaliatory conduct.

---

[2] As to the initial three elements of his claim, Reyna would survive summary judgment. First, his reassignment to the Jail Transport Division constituted an adverse employment action. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (describing the various types of employer conduct that give rise to an actionable retaliation claim). Second, Reyna's campaign activities for Lucio related to a matter of public concern. *See Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (holding that "associating with political organizations and campaigning for a political candidate" relate to a matter of public concern). Third, no evidence demonstrates that Reyna's support for Lucio caused a disruption within the Department. As a result, at the very least, a fact issue exists as to whether a state interest outweighed Reyna's First Amendment rights. *See Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020).

### 2. Garza's Explanation of Non-retaliatory Grounds

As Reyna has provided some evidence of a causal connection, the burden shifts to Garza to present legitimate, non-retaliatory reasons for Reyna's transfer. Garza satisfies this burden. He tenders nine reasons why he "lost faith" in Reyna's abilities to carry out his duties in his former position, and each of these reasons bears no relation to Reyna's political speech. (Motion, Doc. 29, 20–28; Garza Aff., Doc. 27-1) In particular, Garza asserts that Reyna failed to provide requested information as to the "Top Ten Most Wanted List" and billing records for the contract between the County and SpaceX. Reyna also misused Department funds to purchase a number of vehicles and clothing, and mishandled the Department's overtime budget. (Motion, Doc. 29, 20–28; Garza Aff., Doc. 27-1) These grounds would support a sheriff reassigning an officer for reasons other than protected political speech.

### 3. Evidence of Pretext

In his Response, Reyna offers no evidence that the non-retaliatory reasons for the reassignment are pretextual. He relies on decisions finding a fact issue on the matter, but those precedents are easily distinguishable. First, in the case of *Haverda*, a law enforcement officer publicly supported the new sheriff's political rival in the prior election, and was subsequently demoted from captain to corrections officer. The sheriff offered non-retaliatory grounds for the demotion. In response, the employee pointed to past positive performance reviews and coworkers' testimony that he worked diligently to complete tasks while on suspension and that other employees with similar performance quality were not demoted. 723 F.3d at 598. The court concluded that the employee's evidence created "a fact issue regarding whether . . . [the sheriff] would have demoted [the plaintiff] in the absence of the protected speech." *Id.* at 597.

Similarly, in *Jordan*, two employees in the county clerk's office ran against each other in the election for district clerk. After the election, the victor-defendant immediately demoted the plaintiff, and in a motion for summary judgment, presented non-retaliatory grounds for the demotion. In response, the plaintiff submitted circumstantial evidence showing a "trail of

10

breadcrumbs" in the defendant's post-election conduct demonstrating a pattern of hostility towards the plaintiff as a former political rival, culminating in her termination. 516 F.3d at 300–01. The district court denied summary judgment, despite "plausible, even compelling" explanations that the defendant offered. On appeal, the Fifth Circuit affirmed, explaining that "the evidence that others had engaged in conduct similar to [the plaintiff's] without being disciplined is sufficient for a reasonable jury to conclude that [the defendant] would not have taken the same action in the absence of the protected conduct." *Id.* at 301. The court found that this evidence created a fact issue as to whether the non-retaliatory reasons for the demotion were pretextual.

In the present matter, Reyna fails to offer any evidence similar to that on which the plaintiffs in *Haverda* and *Jordan* relied. Reyna does not dispute any of the evidence that his job performance was inadequate. On the contrary, his own testimony indicates that he was unorganized and lacked knowledge about many of Garza's areas of concern. In addition, Reyna does not suggest that Garza treated him differently than other CCSO employees who engaged in similar sub-par work conduct. In the absence of such evidence, the "breadcrumbs" that Garza targeted Reyna—such as by asking Arreola to investigate him or assigning him to transport prisoners across state lines—fail to controvert Garza's evidence that Reyna would have been reassigned irrespective of his political speech.

Rather than submit evidence showing that the non-retaliatory reasons for the transfer are pretextual, Reyna repeatedly argues that no evidence demonstrates that Garza actually considered those reasons before engaging in the challenged conduct. (Response, Doc. 32) As an initial matter, the summary judgment record undermines this argument. In support of his Motion, Garza submits his own declaration describing how he became aware of Reyna's inadequate job performance and why he reassigned Reyna for reasons unrelated to Reyna's political speech. This evidence demonstrates that Garza considered these non-retaliatory grounds when reassigning Reyna.

11

But even if Reyna's argument was true, his claims would still fail. Garza need not present evidence that he actually considered the non-retaliatory factors before he transferred Reyna. He must show only that non-retaliatory factors existed that would have led to Reyna's reassignment, irrespective of Reyna's political speech. In *Beattie*, a school teacher campaigned for a school board candidate who ultimately lost the election. Afterwards, the school terminated the teacher, who sued the school board on the grounds that they orchestrated the termination in response to the teacher's political speech. The district court granted summary judgment against the teacher because she "had failed to establish a causal connection between her political activity and her discharge". 254 F.3d at 599. The Fifth Circuit affirmed, concluding that "there is no evidence that the board knew of the protected activity," which meant that the teacher could not "show that the activity motivated retaliatory behavior." *Id.* at 604. In addition, the court explained that "[e]ven assuming the board did terminate Beattie in retaliation for her campaign activities, it can escape liability, because it would have terminated her for other reasons." *Id.* Those other reasons included that the school board had received complaints that the teacher had been rude to students, parents, and teachers. The teacher offered no evidence to controvert these non-retaliatory grounds for dismissal. As a result, the Fifth Circuit concluded that those grounds shielded the school board from liability. *Id.* at 604 (citing *Mt. Healthy*, 429 U.S. at 284). In other words, even assuming that the school board terminated the teacher for improper retaliatory reasons, rather than on the legitimate grounds offered in connection with the lawsuit, the existence of those non-retaliatory grounds sufficed to warrant summary judgment.

In the same manner, Reyna presents no evidence that raises a fact issue as to the legitimacy of the non-retaliatory reasons for his reassignments. Following the same rationale as in *Beattie*, even assuming that Garza actually transferred Reyna because of his campaigning for Lucio, Garza nevertheless "escape[s] liability [] because he would have [reassigned Reyna] for other reasons." 254 F.3d at 604. Other courts considering similar summary judgment records have reached the same conclusion. *See, e.g., Texas v. Lesage*, 528 U.S. 18, 20–21 (1999) ("The

12

government can avoid liability by proving it would have made the same decision without the [constitutionally] impermissible motive."); *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982) ("Under *Mt. Healthy*, even if we assume that the exercise of protected first amendment activity played a substantial part in the decision to terminate an employee, the termination is not unconstitutional if the employee would have been terminated anyway.").

## IV. Conclusion

For these reasons, the Court concludes that Reyna's claims against Garza, in both his individual and official capacities, do not survive summary judgment.

Signed on July 14, 2022.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge